Military honors play a vital role in inculcating and sustaining the core values of our nation's armed forces. The military applies exacting criteria in awarding honors, and Congress has a long tradition of legislating to protect the integrity of the honors system. The Stoneman  by prohibiting knowingly false statements that one has been awarded a military honor. It regulates a carefully limited and narrowly drawn category of calculated factual falsehoods. It advances a legitimate, substantial, indeed compelling governmental interest, and it shows no protected speech. This Court has recognized— Mr. General, may I pose a hypothetical? During the Vietnam War, a protester holds up a sign that says, I won a Purple Heart, dash, dash, for killing babies. Knowing statement, he didn't win the Purple Heart. As a reader, I can't be sure whether he did and is a combat veteran who opposes the war, or whether he's a citizen protesting the war. Is that person, if he's not a veteran, having received the medal, is he liable under this act? I think, Your Honor, it would depend on whether that was — that expression was reasonably understood by the audience as a statement of fact or as an exercise in political theater. If it's the latter, it's not within the scope of the statute and it would be subject to liability. Sotomayor, isn't it to subject speech to the absolute rule of no protection, which is what you're advocating, I understand? There are no circumstances in which this speech has value. I believe that's your bottom line. Well, what I would say with respect to that, Your Honor, is that this Court has said in numerous contexts, numerous contexts, that the calculated factual falsehood has no First Amendment value for its own sake. Well, that's not the point. Well, I'm not sure that that's quite correct. It is said it often, but always in context where it is well understood that speech can injure defamation. Geertz, you have page 12 of your brief. You make this point, and it's what Justice Sotomayor is indicating. You think there's no value to falsity. But I simply can't find that in our cases. And I think it's a sweeping proposition to say that there's no value to falsity. Falsity is a way in which we contrast what is false and what is true. I want to be — I want to respond with precision, Justice Kennedy, that the — I think what this Court, and Geertz is a good example, has done is to draw a line. And that line — and I think it is Geertz itself that contains this Court's statement that false statements of fact have no First Amendment value. That doesn't automatically mean that a false statement of fact lacks First Amendment protection. But that's in the context of a defamation case. Yes. And you want to take the Geertz case, where it's well understood that defamation is actionable, and say that as a general matter, the government can invade against what's false. The — no, I'm trying to say something much narrower than that, Justice Kennedy, that with respect to factually false statements, the government has the authority if it can meet the breathing space principles that this Court's cases have articulated along with the recognition that factually false statements have no intrinsic First Amendment value. Those are substantial constraints, but they are substantial constraints that are satisfied in this case, because the Stolen Valor Act regulates a very narrowly drawn and specific category of calculated factual falsehood. A verifiably false claim that an individual has won a military honor, and that's information that is within the — and only punishes speech about yourself. So it is speech that's uniquely within the knowledge of the individual speaker. Suppose, General Verrilli, that the decorations were left out, and Congress had said, we don't like people saying that they were in the Marine Corps for 25 years when they never served for a single day in any armed force. So they have a statute just like this one, but it is directed to the false claim that one has served in the armed forces. I don't see in your argument that there's something special about the decorations. Well, I do think the decorations matter, Justice Ginsburg. We think that that kind of a statute would be a harder case, and under the Court's breathing space principles, closer to the line, because the category is much broader, much harder to define, and it would depend on the case. Why is it much harder to define? Why does the broadness have anything to do with the breathing space? I mean, I suppose your argument here is that there is harm. It's not just falsehood, but it's falsehood conjoined with harm, just as libel is. That's exactly our argument, Justice Scalia. In the example that Justice Ginsburg just gave, in your case there's harm to those courageous men and women who received the decorations. In the example that Justice Ginsburg gave, there's harm to the people who honorably served in the armed forces. Yes. And why isn't that, Justice? And if that is the — and that's what I was trying to get to, Justice Scalia. Their services demean when everybody says they served in the armed forces. Under this Court's breathing space principles, Congress would need to articulate a substantial interest. We think that would likely qualify. We just think that's a harder case. But where do you stop? I mean, there are many things that people know about themselves that are objectively verifiable where Congress would have an interest in protecting. High school diploma. It is a crime to state that you have a high school diploma if you know that you don't. That's something you can check pretty easily. And Congress can say, we want people to finish high school. It's a big thing to have a high school diploma. So we want to make sure nobody goes around saying they do when they don't. What about that case? I think that that case, Your Honor, I think if it's an objectively verifiable fact, it would seem more likely that a State legislature might enact a law like that. If it were an objectively verifiable fact, then the State could articulate a substantial interest of the kind that Your Honor identified. The substantial interest is the one that I've just said. States do have laws. Some States do have laws respecting false claims to have received a diploma from a public university. But that's for submitting resumes? That's fraud. If I could get back to Your Honor's point about the nature of the harm. It is true that in Gertz you had the particularized harm. But this Court, the common characteristic that allowed this Court to move from defamation to false light privacy to intentional infliction of emotional distress in the Falwell case, then to baseless lawsuits, the sham exception in North Pennington, the sham exception under the National Labor Relations Act. The common characteristic was not an analogy to the particularized harm that existed in defamation context. The common characteristic that this Court's opinions identify is the calculated factual falsehood. It is true that the harm here is different. Kennedy, they were in the context, though, of recognized towards intentional infliction for emotional distress. Here, it does seem to me that you can argue that this is something like a trademark, a medal in which the government and the armed forces have a particular interest, and we could carve out a narrow exception for that. I think we'd have to do that. But just to say that the cases you mentioned say that there's no value to false speech, I simply cannot agree that they stand for that broad proposition. They do in the particular context of a recognized tort or a contentional infliction of emotional distress. Verrilli, that is true. And this is a case in which one of the harms that justifies this statute is the misappropriation of the government-conferred honor and esteem, and that is a real harm and a significant harm. And there is also the particularized harm of the erosion of the value of the military honors conferred by our government, and those are particularized harms that are real and the kind of speech that this statute regulates are a genuine threat to those harms in a way that, looking backwards, looking and anchoring this argument in the tradition of this Court's precedents, this is a type of calculated factual falsehood. Sotomayor, yes, ma'am. Sotomayor, General, I spent a lot of time going through the multiple cases that you cited in your brief, defining the various statutes that basically impose penalties for impersonation of some sort or another, and virtually in every one of them, except perhaps one, there was either an economic interest that was harmed by the impersonation, either by the very face of the statute or by the nature of the claim, a dilution of a trademark by taking on someone else's valuable property rights. And so I went back reading our cases, and just a story many, many years ago said, look, falsehoods have no value as such, but the breathing space concept is defined by those falsehoods which cause injury to rights that people possess, to pecuniary interests that they have or to the reputation of others. And almost every statute where we've approved a harm concept as being permissible for recovery has affected one of those three things. So please tell me what's wrong with Justice Story's view, number one. And number two, how does the definition of harm fit in that? What's the harm here that fits within that description? Verrilli, I think three points. First, if I could just make a general point in response to Your Honor's question. I think one reality here is that as I read this Court's cases, this Court has never held or even suggested in any context when the government wants to regulate a properly defined category of calculated factual falsehood that it has to meet strict scrutiny. That would be a real break and a real change in the law that would subject. Sotomayor, I didn't mention neither the Justice Story. He said if you want to regulate a falsehood, it has to cause a harm in this way. That's why I want to get to that. But I think it's relevant, Your Honor, to the point about Justice Story in the following way. The — there are a series of statutes, 18 U.S.C. 1001, 18 U.S.C. 962, the impersonating Federal officer statute, 1001 being the false statement statute, perjury statutes. Those are designed to protect the integrity of the government processes. Sotomayor, there isn't. Sotomayor, they're intended to protect the right of the government to secure truthful information. The government has a right to subpoena you at trial, subject you to an oath, and force you to tell the truth. So if you — that's a right. That fits within Story's definition. Verrilli, but not a — as I read what Justice Story was talking about, he was talking about the rights of private citizens. And what I'm saying is there is an additional category of long-recognized, well-accepted government regulation of factual, calculated factual falsehood that serves systemic interests. And, of course, with respect to the Stolen Valor Act, Congress is building the Stolen Valor Act on a statute that Congress enacted in 1923, which prohibited the wearing of medals without justification to wear the medals. And, of course, one of the reasons Congress acted in 1923 to do that was out of concern that the misappropriation of the government conferral of esteem was going to cause substantial harm. That's been on the books for the better part of a century. Alito, is your argument limited to statements that a person makes about himself or herself? Yes, it is. That's the category that the statute regulates. That is in a — it seems to me in a situation in which the statute is limited to factually verifiable information, a person is speaking about himself or herself and the category of what's prescribed is clear. Alito, what's the principal reason for drawing the line there? Suppose the statute also made it a crime to represent falsely that someone else was the recipient of a military medal, so that if someone said falsely and no one else did, knowingly, that a spouse or a parent or a child was a medal recipient, that would also be covered. That would be protected by the First Amendment? I think that would be a — that would be a case in which, under the breathing space principles that this Court applies when we're talking about calculated factual falsehood, you'd have to answer a question, which is, how much risk is there of chilling constitutionally protected speech, because when you're talking about somebody else? I don't see any difference as far as that risk goes. I hope that in your earlier colloquy with Justice Kennedy, you were not retreating from what our cases have repeatedly said, that there is no First Amendment value in falsehood. And that only — and that — Now, this doesn't mean that every falsehood can be punished, because in punishing some falsehoods, you risk deterring — deterring truth. And that's — that was what I was trying to say in response to Justice Alito's question. Because I believe that there's no First Amendment value in falsehood. You'd have to answer the question in that case of whether there was a material risk of deterring expressions truthful, because who knows whether your grandfather was telling the truth when he — when he said he won the medal, and so it may be a more difficult case. But under the Court's breathing space principles, that's the question that one would have to answer. Well, the assumption is that it's false. That was — and that it's not so hard to find out if somebody claims to have the medal of honor, and he doesn't. So the — first, you answered yes, that it's only self, and now you said, no, it can be, or at least I think you said, making a false statement of fact. And the concern is, and I gave you the question of just in the service, leaving out the declarations, other statements of fact, false statements, like I deny that the Holocaust ever occurred. That's a statement, a false statement of fact, isn't it? Now, it could be. I think a statute seeking to regulate that, Justice Ginsburg, would have viewpoint discrimination problems of the kind that the Court identified in RAV, and I think also under the Court's breathing space analysis, you would — you'd have to look long and hard and have significant concerns about that kind of a statement because it's so bound up with matters of ideological controversy that — that you'd want to exercise care. But that's really quite different from what we have here. This is a pinpoint accuracy, a specific, verifiable, factual claim about yourself that you want to meddle. Roberts, I want to follow up on Justice Scalia's question, because I'm not sure I understood. The government's position is that there is no First Amendment value in a false representation of fact, by which I understand you to mean not parity or something like that, but a statement that's intended to be understood as true. There is no First Amendment value in that statement. It may be protected because of the breathing space argument, but in whatever context, in whatever guise, there's no protection in that false representation as such. Well, that is the position we've taken in this case, Your Honor, and the reason we've taken it is because we read the Court's precedents, Gertz and many others, Falwell v. Hustler, as saying precisely that. And, in fact, Falwell goes a step further and says false statements of fact are affirmatively harmful to First Amendment interests because they impede the search for truth. So our position is based on the precise language of cases stretching back a half a century. Garrison said calculated falsehood is a category of speech that is no part of the expression of ideas or the search for truth, and then it cites Chaputis. But what about these State statutes? There are more of them than I thought that there would be that say, no demonstrable falsehoods by a political candidate in a political race, and prohibit demonstrable falsehoods by political candidates. How would your analysis apply to those? Would they come out the other end as constitutional? I think that those kinds of statutes are going to have a lot harder time getting through the Court's breathing space analysis because the context in which they arise is one that would create a more significant risk of shields. Well, suppose it says demonstrable falsehoods about yourself, just about your qualifications, about what you've done in your life, your — you know, whether you have a Medal of Honor, whether you've been in military service, whether you've been to college. So any demonstrable statement that a candidate, political candidate, makes about himself. I think under the Court's breathing space analysis, because of the political candidate context, those statutes are going to pose a particular risk of chill that this statute does not pose because this is a statute about verifiable factual falsehoods. I guess I don't understand why it would be more chilling in the one case than in the other. They're the same kind of statement, and one knows the same sorts of things about oneself. Well, I think the idea would be in a situation like that one, the government's power and authority is being trained specifically on the political process. And the State has a special interest in the political process. And this is — this is quite different. This is a statute that's a— Well, I assume that that would be in the case of these State statutes, because the State feels that it has a specially important interest in maintaining the political sphere free of lies. But I guess the chilling effect seems to me, at least, to be materially different than in a situation like this one, where what we're talking about is a very specific pinpoint thing. One thing, have you been awarded a military honor or not? And a statement that is about yourself only, not about somebody else, and that — and is supported by a quite strong particularized interest in ensuring the integrity of the military honor. Scalia. Suppose that even in the commercial context, we allow a decent amount of lying, don't we? It's called puffing. Although, you know, making false representations to sell a product is unlawful, we do allow puffing, don't we? Well, certainly. And you won't buy it cheaper anywhere else. That's certainly right. But when we're — and that is the line that we're talking about. So maybe we allow a certain amount of puffing in political speech as well. And I do think— Nobody believes all that stuff, right? I do think the Court's — I do think the Court's breathing space analysis would call for that. I think that's true. But this is a different context. And I suppose it might have something to do with whether to call it collateral or not. I mean, I would think the concern in the midst of a political campaign is you have the U.S. attorney or the deputy district attorney bringing a — filing a prosecution at someone 2 weeks before the election saying, well, you lied about this or that, and maybe there would have to be a deposition or maybe there would have to be a trial. I don't — nothing like that's involved here. Nothing at all, Your Honor. And that is what I was trying to say. Kennedy, it seems to me your best analogy is the trademark analogy, Olympics case, et cetera. You put that in a rather minor — not an afterthought, but it's a secondary argument in your brief. It seems to me it's the strongest one. The whole breathing space thing almost has it backwards. It presumes that the government is going to have a ministry of truth and then allow breathing space around it. I just don't think that's our tradition. On the other hand, I have to acknowledge that this does diminish the metal in many respects. Yes, and that's the government's interest here. And we do think that that kind of — I think, Your Honor, that the reason that — I think our — there were a lot of slippery slope-type questions here today. But the — I would urge the Court not to — not to decline to make a sound decision about this statute based on concern about not being able to draw the line, because this statute is as narrow as you can get. Sotomayor, but I have a problem, which is it's not as narrow as it could get. It wouldn't take much to do exactly what Congress said it was doing, which was to protect against fraudulent claims of receiving a medal. And the example it used was someone who used a fraudulent claim of receiving a medal to get money. What I'm trying to get to is what harm are we protecting here? I thought that the core of the First Amendment was to protect even against offensive speech. We have a legion of cases that said your emotional reaction to offensive speech is not enough. If that is the core of our First Amendment, what I hear, and that's what I think the Court below said, is you can't really believe that a war veteran thinks less of the medal that he or she receives because someone's claiming fraudulently that they got one. They don't think less of the medal. We're reacting to the fact that we're offended by the thought that someone's claiming an honor they didn't receive. So outside of the emotional reaction, where's the harm? And I'm not minimizing it. I, too, take offense when people make these kinds of claims. But I take offense when someone I'm dating makes a claim that's not true. And as the father of a 20-year-old daughter, so do I. So do I. But if I could just take a minute on the interest, because I do think it's quite important. At some level, of course, it's true that no soldier charges up Mount Suribachi thinking, well, I'm going to do this because I'll get a medal if I get to the top. That's not what the military honor system is. Sotomayor, I'm not going to do this because the medal's been debased. Well, that's not what the honor system is about. The honor system is about identifying the attributes, the essence of what we want in our servicemen and women, courage, sacrifice, love of country, willingness to put your life on the line for your comrades. And what the medals do is say to our military, this is what we care about. It's what George Washington said in 1782 when he set up the honor system. It's designed to cherish the valorous ambition in soldiers and to encourage every species of military merit. And what I think with respect to the government's interest here and why there is a harm to that interest is that the point of these medals is that it's a big deal. You get one for doing something very important after a lot of scrutiny. And for the government to say this is a really big deal and then to stand idly by when one charlatan after another makes a false claim to have won the medal does debase the value of the medal in the eyes of the soldiers. It does do that. That is the government's interest. We think that is a real and substantial interest and it's directly shared. Sotomayor, but the reality is that this gentleman was publicized. Deriled for what he did. His public position was compromised, as is the case with almost everyone who is caught at lying. But given that this is a category of calculated factual falsehood, we think the government has the authority and the constitutional space to try to deter this kind of speech as well as allow for private deterrence. Did the military ask for this? You are claiming there is a special interest in seeing that a military honor is not debased. It did not, Justice Ginsburg, but under Article I, Section 8, Congress has substantial authority to regulate our armed forces, get substantial deference. It's not unlike the statute that the Court evaluated in the Fair case in that regard, which is not a statute that the military asked for, but Congress nevertheless was given substantial deference. Did the commander in chief sign that legislation? Yes, he did, Your Honor. Thank you. Thank you, Mr. Verrilli. Mr. Libby. Thank you, Mr. Chief Justice, and may it please the Court. The Stolen Value Act criminalizes pure speech in the form of bare falsity, a mere telling of a lie. It doesn't matter whether the lie was told in a public meeting or in a private conversation with a friend or family member. And the law punishes false claims to a military award regardless of whether harm results or is even is likely to result in an individual case. What is the First Amendment value in a lie, a pure lie? Just a pure lie? There can be a number of values. There's the value of personal autonomy. Value of what? Personal autonomy, that we get. What does that mean? Well, that we get to exaggerate and create our own. No, no, not exaggerate. Lie. Well, when we create our own persona, we're often making up things about ourselves that we want people to think about us, and that can be valuable. Samuel Clemens creating Mark Twain. That was creating a persona, and he made things up about himself. Well, but that was for literary purposes. No one's suggesting you can't write a book or tell a story about somebody who earned a Medal of Honor, and it's a fictional character, so he obviously didn't. It just seems to me very different. Perhaps. But there are other things in addition to the fact that people tell lies allows us to appreciate truth better. But you really think that there is a the First Amendment, that there is First Amendment value in a bald-faced lie about a purely factual statement that a person makes about himself because that person would like to create a particular persona? Gee, I won the Medal of Honor, I was a Rhodes Scholar, I won the Nobel Prize. There's a personal the First Amendment protects that? Yes, Your Honor, so long as it doesn't cause imminent harm to another person or imminent harm to a government function. The obvious example that you speak of, are there Jews hiding in the cellar? No. Well, that's right. And that's certainly a beneficial lie. That's not a statement about oneself. Are you hiding Jews in the cellar? Excuse me. Sorry. It seems to me that the Stolen Valor Act is more narrow than that. And I would say in that situation you would not describe what the individual in Justice Breyer's hypothetical was as simply telling a false statement about himself. It is about whether there is someone hiding in the attic. It is not about himself. Well, perhaps just dealing with an example under the Stolen Valor Act, if a grandfather were to make up a story that he had won a medal in order to persuade a grandchild to join the military. In order to. It seems to me that that's missing the limitation that the government has read into the statute. Not damage, not for parody, not to avoid the discovery of someone who should be hidden, not in order to do something with respect to one's grandson. It's just a purely false statement about oneself. What is the First Amendment value in that, again? Well, another value is the fact that the purpose of the First Amendment was a limit on government power. It's — our Founders believe that Congress, as a general principle, doesn't get to tell us what we as individuals can and cannot say. Well, of course, they do in countless areas, the State does, whether you're talking about defamation, trademark, perjury, all sorts of things. You can't adopt that as a general principle and apply it without regard to the situation. Well, that's right, Mr. Chief Justice, but in all of those examples, those are examples where we have harm attached to the falsehood. Well, sometimes the harm is just the impairment of governmental purposes, such as Section 1001, which criminalizes the making of a false statement to any Federal agent, for Pete's sake. How do you justify that? Because the making of the false statement impairs a governmental investigation. And what is being urged here is that the making of this type of a false statement impairs the government's ability to honor valorous members of the armed forces. Well, we believe there's a difference there, Your Honor. With respect to 1001, there's the substantial risk of imminent harm to a government investigation. Whether it in fact causes that direct harm, there's still a significant risk of imminent harm resulting from telling a lie to a government investigation. Kagan. Kagan. But, Mr. Libby, you've suggested to us that we should apply strict scrutiny to all of these cases. Now, almost nothing passes strict scrutiny. Why should 1001 pass strict scrutiny? I mean, it seems to me you're proposing a test that would invalidate all of the laws on the books regarding false statements. Well, no, Your Honor. What we're suggesting is false statements laws do have a history in this country, and the Court could recognize a historical category of imminent harm or potential risk of imminent harm to government functions. And perjury certainly falls into that category. 1001 very well may fit into that category. Since the beginning of our nation, Congress has passed these various false statement laws. Scalia. Do we give some deference to Congress as to whether there is a harm to governmental purposes, or should we make it up ourselves? When Congress passed this legislation, I assume it did so because it thought that the value of the awards that these courageous members of the armed forces were receiving was being demeaned and diminished by charlatans. That's what Congress thought. Is that utterly unreasonable that we can't accept it? Justice Scalia, it's not entirely clear what Congress thought here, because Congress held no hearings on this. It made a broad general finding that false statements are a predication. Well, it's a matter of common sense that it seems to me that it demeans the medal. Let me ask you this. What do you do with the statute which prohibits the wearing of a medal that has not been earned? Wearing a medal is a slightly different category, because there you're dealing with conducts rather than content. Well, I'm not so sure. You know the Tinker case with the armband. It's purely expressive speech, it seems to me. I think if you prevail here, that the wearing prohibition must also be in serious doubt. It may be, or it may be in doubt under certain situations in where one is wearing a medal. But certainly Congress has an interest in protecting nonexpressive purposes of wearing a medal. But I think it is. The whole purpose of the person who puts the medal on his tuxedo that he didn't earn is an expressive purpose. That's pure expression. It may be, Your Honor, but again, we view it under a different prism. Why? I mean, it's expressive. One is I am speaking through conduct, and the other is I'm speaking through words. You wear the medal, and you're saying I am a medal of honor winner. That's right. And as I said, it may ultimately be the case that the Court finds that if in fact it's unconstitutional, in this position, that it could be. So you think the wearing of a military declaration that you haven't earned, that that's also a questionable consistency with the First Amendment? It may be, but again, it would depend on the circumstances. No circumstances. Will you go out in the street with the medal on you for everybody to see? If there's — if Congress does not have a non-speech purpose for prohibiting the wearing of the medals, then if it's strictly an expressive purpose, then, yes, there would be a significant First Amendment problem. Well, don't you think that's the case? There's no non-expressive purpose that I can think of. Well, and that very well may be. What I can say is in this case, what we're dealing with is strictly a content-based regulation on speech. But you acknowledge that the First Amendment allows the prohibition or the regulation of false speech if it causes at least certain kinds of harms. And the problem I have with your argument is determining which harms you think count and which harms don't count. Would you go as far as was suggested earlier to say that only pecuniary harm counts? If you'd say that, then the classic case of intentional infliction of emotional distress is unconstitutional, going up to someone and saying falsely, your child has just been run over by a bus. So how do we determine which harms are sufficient? I believe what we believe, the right way of looking at this, is you determine whether or not there is imminent harm or a significant risk of imminent harm to an individual or to a government function that would result from the speech. But when you say imminent, you mean, what do you mean by that? I guess I'm suggesting the Brandenburg standard, which is, if you're going to do something Well, if that's the standard, then most of the prosecutions for making false statements to a Federal law enforcement officer are not going to survive, are they? Well, but the issue is about the law, and the issue with 1001 and those false statement statutes is it's the substantial risk of imminent harm to the government that could result from the falsehood. So, well, certainly it may not result in a particular case, but the substantial risk of imminent harm is there. Well, then you're not really talking about imminent harm, I don't think. You're just talking about harm. Well, when one lies to a government investigator, presumably you're doing it in order to send them in the wrong direction, even if it doesn't do that. So their harm may not be there, but there's certainly a significant risk of harm that the government has the right to protect itself from. And that's why we believe that's where you draw the line. And that's where this Court appears to have drawn the line in those categories of speech that it has said are unprotected, such as. Kaganer, let's suppose that I agree with Gertz that there is no constitutional value in a false statement of fact, and the reason why we protect some false statements of fact is to protect truthful speech. So if that's so, is — how is it that this statute will chill any truthful speech? What truthful speech will this statute chill? Your Honor, it's not that it may necessarily chill any truthful speech. I mean, we certainly concede that one typically knows whether or not one has won a medal or not. We certainly — we concede that point. So, boy, I mean, that's a big concession, Mr. Libby. Then you're saying you can only win this case if this Court decides that the Gertz statement was a kind of overstatement, an exaggeration, buffering. Well, we do — well, we do have the situation where we believe the statute currently does cover someone could be prosecuted for engaging in parody or satire or exaggeration. Certainly, there's nothing on the face of the statute to suggest that those — But the government has said that's not how we read the statute, and the courts read statutes to avoid a constitutional collision. So let's assume that we are not going to cover performances, satire. It's just a bald-faced lie. That's all that this covers. Then it's still our position that it's still a — that all speech is presumptively protected unless we go back and it fits into one of the historical categories of speech that this Court has found historically is unprotected. And bare falsity certainly has never previously been recognized by this Court as being an unprotected category of speech. Roberts I don't understand the government to argue that the speech at issue here is totally unprotected. I understand them to argue — I mean, it is totally unprotected. I understand them to argue that it can be limited under its breathing space rationale. In other words, it's not within one of the categories of totally unprotected speech. You do have to analyze it under the First Amendment, and you analyze it to determine if it chills protected speech. I suppose I read the government's argument differently. As I read the government's argument, it's that it's entitled to at most limited protection. So the government seems to start from the presumption that it's not fully protected speech, whereas, of course, what we should be starting with is the presumption that it is fully protected speech unless this Court has previously said it's in one of these historical categories of unprotected speech. Sotomayor, may I — if I understood your argument, you're saying historically we have not protected false statements that cause harm. I think that's your argument, isn't it? That's correct. Yes, Your Honor. All right. Assuming — so it's — we do protect false statements, presumptively, but the historical exception, like defamation, are those that cause harm. So I go back to Justice Alito's question, because you really haven't answered his question. You've dealt with the government process cases, although we could argue about whether that's protecting a process or protecting a government right to truthful information. That's a different issue. But the question is, how do you deal with the intentional infliction of emotional distress? Because damage, we require injury. And it's defined under law what kind of injury. So tell me how you define harm in the nongovernmental situation number one, and then tell me why that — this situation doesn't fit that definition. Well, in the situation with intentional infliction of emotional stress, you are dealing with an instantaneous harm, the mental distress that results from the false statement. So there's imminent harm as a result of — that results in intentional infliction of emotional distress or false — So why isn't the outrage that medal winners, legitimately entitled medal winners, experience in seeing fake people or hearing fake people claim a medal, why isn't that comparable? Well, I don't believe that fits into the same category of mental distress that we look at in intentional infliction of emotional distress. Certainly, people are entitled to be upset by these false claims. I mean, I'm personally upset by these false claims. But the fact that there's a certain level of upset doesn't mean that you're harmed in the sense of the intentional infliction of emotional distress tort. And so what we're dealing with here is simply a noninstantaneous harm. Now, what the government has suggested is that there's no harm that really results from a single claim, that Mr. Alvarez's falsehood did not cause harm to any individual. But it seems to me what you're arguing is that we should determine that there are certain harms that are sufficient to allow the prohibition of a false statement, and there are certain harms that are not sufficient, irrespective of what judgment Congress made about the significance of those harms. Is that accurate? That's certainly part of it. I mean, we believe that there needs to be imminent harm, that it needs to be targeted harm to an individual or to government function, that it can't be the type of diffuse harm that the government tends to put on individuals. Is that the case here? Why not? Because, after all, we're willing to protect the Olympics Committee when a false person saying he's the Olympics Committee might deprive the Olympics Committee of a penny, while here they're saying that to win this great medal, say the Congressional Medal of Honor, the highest award in the military the nation can give, you're deserving of the most possible, grandest possible respect, and we don't even want you to have to think about somebody having taken that name falsely. And so we will discriminalize it to discourage such activity that undermines the very thought and purpose of giving the medal. All right? So I'm just saying in my mind there's real harm. And there's real harm, and yet I can think of instances where we do want to protect false information. And I want you to accept that as a given, because that isn't my question. My question is, if I'm right, that there are very good First Amendment reasons, sometimes, for protecting false information, and if this also would cause serious harm, what the government is aiming after, are there less restrictive ways of going about it? And if so, what and why? There are. First of all, more speech. There's time to fix the problem. If someone tells a lie about having received an honor, there's time for them to be exposed, and in fact, that's what typically happens. Scalia's going to hire people to follow, you know? Is that realistic? I mean, there's a sanction. You know, when there's a sanction in place, you think twice before you tell the lie. But if there's no sanction except you might be exposed, who's going to expose you? That sanction already exists, and there are a lot of people, nonetheless, who tell the lie. You really expect the government to hire investigators to go around the country outing people who falsely claim military honors? That's not going to happen. Well, Justice Scalia, isn't that exactly what's happening right now with this law?  It's because it's reported, individuals hear the statement, and they think it may be false. They investigate it and conduct their own investigations. So that's what happens, and that's what's supposed to be the whole idea of more speech. Breyer. Is there anything else that the threat of criminal prosecution might discourage from lying? Who would never be caught? So at least as to that set, exposure won't work. So you have a less restrictive alternative that helps some, but not completely. Are there others? Well, of course, if you're never caught, then under the government's theory, then no one has been harmed individually or in the act? Not under my theory. My theory is that it does hurt the medal, the purpose, the objective, the honor for people falsely to go around saying that they have this medal when they don't. Okay? So I might be wrong about that. I just asked you to assume that for purposes of argument, because what I'm trying to get to is I want as big a list as I can to think about of what the less restrictive alternatives are or might be. Sure. The military can redouble its efforts at honoring those who, in fact, are entitled to the awards. There was a congressional hearing that suggested that the military has been a little lax in identifying true heroes and awarding them medals, so that can be done. The government could publicize the names of true winners. It could create educational programs to let the nation know what it takes to win these awards, what these awards are, who's won them, all the heroic acts that have been committed. Scalia I'm not giving a medal of shame to those who have falsely claimed to have earned the Medal of Valor. I'd be a good honor. Well, Your Honor, actually, that's certainly something the government could do. Roberts Well, not under your theory. I mean, it's still a sanction for telling something that you say is protected under the First Amendment. Whether you get six months or a medal of shame doesn't matter under your theory. Scalia Well, there is a significant difference between a criminal sanction that puts someone in prison versus simply exposing them for what they are, which is a liar. And Mr. Alvarez, whether or not he in fact was sentenced to a crime, he still was exposed for who he was, which was a liar. Ginsburg Suppose the statute were amended, as has been proposed, to require an intent to obtain anything of value. Scalia That would turn the law into a fraud statute. And of course, fraud is an unprotected category of speech, so that certainly would be a constitutional law. Ginsburg But that wouldn't reach this Speaker, is that? That wouldn't reach Alvarez, because he didn't obtain anything of value. Scalia Well, that's not what we have here. What we do know is that Mr. Alvarez did not obtain a thing of value. Roberts How do we know that? He was politically active, right? Scalia Yes. Roberts Well, doesn't it help a politician to have a congressional medal of honor? Scalia Perhaps, Your Honor. I mean, certainly there are many people out there that would consider that to be a great thing. There are also a lot of people out there who don't know what it is. And so to them, it might not mean a whole lot. Roberts But it seems to me that your willingness to say that this statute is valid so long as there is some benefit to the person who lies, it's an awfully big concession. Scalia Well, it would be, again, if Congress were to amend the law to require that it be done with the intent to obtain a thing of value, again, it becomes fraud. And fraud is something that the government does have the right to prosecute. So that would be a little bit of a concession. Scalia Value, though, has to be something of commercial value, right? It's doing it just to obtain praise and the higher esteem of your fellow citizens. That's not enough. Scalia Well, Your Honor, the proposed amendment says anything of non-de minimis value. How that is ultimately interpreted? Kennedy It's just the basic definition of fraud in the criminal law. Scalia That's right. Now, could it be a non-pecuniary thing of value? As it's currently proposed, yes. Roberts So if he makes this statement at a debate when he's running for office, then you can prosecute him, because getting the office is presumably something of value. It presumably has some pecuniary aspect to it. Kennedy Perhaps, Your Honor. And again, it may come down to how the courts ultimately interpret a thing of value. It's not clear that simply trying to obtain a vote from somebody is necessarily a thing of value, would be considered a thing of value. Obviously, if you promise to give up your votes in office in return for support, that would be a little different. Scalia What if he just gets the cheers of the crowd? He's up there. I'm a congressional medal of rank. The crowd cheers, and they give him a parade down Main Street. Is that something of value? Kennedy It could be. Again, it will come down to, over time, how that ultimately gets. Alito But that's not really the answer is, would the First Amendment permit that? Kennedy That's a difficult question, Your Honor. Alito Well, that's sort of the question we have to answer here. I get that. Alito I mean, suppose what the person gets is a date with a potential rich spouse. Would that be enough? Kennedy Your Honor, I think when it comes to the situation where you're getting something like a date, I do not know that — I certainly wouldn't consider that a non-de minimis thing of value. But — Alito Some people might have a different opinion. Kennedy Well, that's — and that may be, which is why, should that ultimately become the law, courts will have to look at that very closely. Breyer How does it work in the law now, where we have similar statutes and there's an additional requirement when you're imitating, say, a Federal officer or somebody else? You shouldn't. You have to perform an overt act that asserts authority that the impersonator claims to have. What does that add? You have to — does it add enough to just make it not pure speech, to limit it, to wall off the things about — the things that we're worried about in the First Amendment? Or there's another one, you have to falsely assume or exercise powers, duties, and privileges. Those are ways statutes have of limiting this thing. How does that work? Alito But when you get into the issue of impersonation, then you're — the Court, perhaps, should be assessing it under the amount of imminent harm to an individual that can perform. Breyer There's nothing to do with harm. It's a way of walling off things that are of concern under the First Amendment from those that aren't. And what they use, I read you what they use, performing, you know, you know the language it's written about in the briefs. And I just want to know how you would think about a statute that imported that kind of language, which is limiting language. Alito It would be important, certainly in the First Amendment context, to limit the language as much as possible. You want to make it as narrow as possible, because, again, we're supposed to start from the presumption that we have the right to say pretty much what we want to say. And then we start to limit it where, again, and I guess it goes, again, back to what this Court said in Stevens and Entertainment Merchants, which is, is it one of these historically unprotected types of speech that is not entitled to constitutional protection? Unless the Court has additional questions. Roberts. Thank you, Mr. Libby. General Verrilli, you have three minutes remaining. Verrilli, my only, one of my questions, is the slippery slope problem, college degrees and so forth. Could you address that? Verrilli, Yes, Your Honor. The, we think the breathing space analysis does a very substantial degree of work in controlling the, what Your Honor is describing as a slippery slope problem. The government's got to have a substantial interest, the statute's got to be narrowly drawn, it's got to meet all of those. College degrees. Well, as I think I said in my, in my opening statement, that I actually think that's a case in which you could argue that one either way, because there might be, if the government articulated a substantial interest in protecting the, it's, the. How about extramarital affairs? Excuse me, Your Honor, I didn't hear you. The government has a strong interest in the sanctity of the family, the stability of the family, so we're going to prevent everybody from telling lies about their extramarital affairs. In addition to the, in addition to the, the governmental interest, Your Honor, there's, it's got to be tailored in a way that avoids chill, and I think it would be very difficult in that situation. This is something about the person's own experience that, that the person knows everything about. You either had one or you didn't have one. That's right. And that's a hard case. But I do think with respect to the chilling effect analysis, you, you would, I think, have a great deal of difficulty sustaining that statute. But, of course, that's not the kind of statute that we have here. This is a targeted statute that's designed to deal with a particular problem. Breyer. The trouble is you can think of 10,000 instances that meet your criteria that one candidate or another could bring up in a political campaign. And we don't know what will come up, but I can easily think of examples. And, and then if this is lawful and constitutional, then you have people in political campaigns suddenly worrying that the U.S. attorney is going to come in and start indicting him. Now, that's part of the chilling effect, and you've assumed you can get around this chilling effect, but I'm less certain. Well, I think, but that's why I think the breathing space analysis requires before a statute gets upheld that it, that it not have that kind of chilling effect. How do we know this doesn't? And this statute doesn't, and that's the key. Counsel, it seems to me that you're asking us to value the speech in context. We're not talking about the effect of the speech and whether you can regulate that. You're asking us to say, you know, the guy who says he's a college graduate in a political campaign, that could chill political speech. So in that lie, in that context, you can't sanction. So. Sotomayor But you can sanction that lie in a different context on a date. I don't know, because on a date it doesn't chill political speech and it will induce a young woman to date someone who she thinks is more of a professional, because that harms the parents, it harms the family. May I answer, Mr. Chief Justice? Roberts Oh, yes, thank you. The Respondent has conceded that this statute chills nothing. That should be a sufficient answer to Your Honor's concern that with respect to other statutes in the future, they can be evaluated to determine whether or not they impose a chill that would lead as an instrumental matter to the conclusion that they ought not to be found to satisfy the First Amendment. But as the Respondent concedes, there is no chill here, so this statute is constitutional. Thank you. Roberts Thank you, General. Counsel. The case is submitted.